CHANCERY.

*Case* 79.

*June* 10.

# Floyd *vs* Floyd, &c.

APPEAL FROM THE GARRARD CIRCUIT.

*Slaves. Distribution. Devises. Administration.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

The Court making distribution of estate undisposed of, and as to which the testator dies intestate, should not without reason, assume, without allegation or proof, that the testator, had [not done justice, and direct an account of advancements made in order to make the children equal out of property undisposed of by will.

IT seems to this Court, that there is no sufficient evidence of a gift or transfer of the slaves Polly and her five children, from John Floyd to Davis Floyd, and that they are to be considered as a part of John Floyd's estate in the hands of Davis Floyd, as his administrator with the will annexed. And as these slaves were not devised, John Floyd died intestate as to them, and they are subject to distribution according to the laws of the State.

On examining the statutes of distribution, we are of opinion that the case of partial intestacy is within the principle of the act of 1830, (2 *Stat. Laws*, 784,) as it is within the letter of that of 1797, (*Sec.* 28, 1 *Stat. Laws*, 661,) and that the estate not devised is subject to distribution in such manner as to equalize the advancements made by the decedent in his lifetime, in whatever species of property they may have been made. But as it may be presumed that a father intends equality among his children, and that in making his will he takes into consideration the previous advancements to each, the Court should not, *ex mero motu*, assume the contrary, nor direct an account of advancements in a case of par-

tial intestacy, except so far as a basis is laid for it in the pleadings of the parties by suggesting inequality, and asking and offering equity.

In this case no inequality is suggested and no statement of advancements made in the pleadings, except as regards the slaves given by the testator to his children, or their representatives, during his life. And, therefore, these advancements alone, should now be regarded in the distribution of the undivised estate, which should be so distributed as to make up, as far as may be, any inequality in the advancements of slaves. Whatever is devised by the will is neither subject to this distribution, nor to be taken into the account as advancements, but is to be appropriated according to the direction of the will. But the slaves named in the will and directed therein to be equally divided and which were actually distributed by the testator, are to be considered as advancements. Since the gift or distribution of them by the testator in his lifetime, must be regarded, *pro tanto,* as a revocation of the will. In this view, the will operates only on the remaining slaves therein named, which must, according to its direction, be equally divided among the devisees and their representatives, without regard to the advancements. The others being in fact, undevised and given in the lifetime of the testator, must be regarded as advanced.

Upon the evidence in the record, it seems probable that there has not been an entire equality in the advancements of the slaves. And as those which are named in the will and were not distributed or given by the testator in his life, must be equally divided, and those which descended may be subject to a different distribution, they properly form two classes, and should not have been directed as one lot to be equally divided. Another satisfactory ground for this discrimination is, that as to the slaves which descended, the administrator is entitled to a refunding bond, but the slaves on which the will operates, belong to the devisees and should be appropriated to them without any such burthen.

The decree is, therefore, erroneous, in directing a division of the two classes of slaves without discrimination,

FLOYD
*vs*
FLOYD, &c.

A gift or other disposition of slaves previously devised, is *pro tanto* a revocation of the will.

Slaves devised, pass at once to the devisee, and the executor has no right to ask a refunding bond before distribution as to slaves descended he may demand such bonds.

Slaves devised and slaves descended should

not be counted
in one class
for division, but
kept separated;
and so divided as
two classes.

and also in directing a division of the slaves which descended, without an account of the advancements in that species of property, to be ascertained by a commissioner, and a bond should be required before their distribution. The division of the slaves which pass by the will, might have been directed at once if desired, and without waiting for an account of advancements or hires.

Andministrators
should be allowed in their accounts for taxes
paid on slaves;
and commission
on hire, as well
as the legal expenses of administration.

With regard to that part of the decree which estimates the hire of the slaves, we do not perceive that the administrator has any ground to complain except as to the hire of Polly and her children, which we think too high, considering the ages of the children. But as this part of the case should also be referred to the commissioner, we leave it with the single additional remark, that the administrator having considered and treated Polly and her children as his own, and not entirely without ground, he should not be charged with what they might have been hired for in the market, but with the reasonable value of their services to him. The charges made against the administrator on account of the personalty, seem to be correct, and to embrace every thing properly chargable, unless a small item of interest to be noticed hereafter, should have been charged; but he is allowed no commission on the hire of the slaves, nothing for his care of them, or for taxes which must be assumed to have been paid by him, and nothing for the legal fees and expenses of the administration, which must necessarily have been incurred. For the ascertainment of these and any other just credits, this part of the case should also have been referred to the commissioner. And the decree is erroneous in making no allowance for them, and in not requiring a refunding bond for the estate distributed.

We perceive no error in the refusal to continue the cause on the ground alledged. Nor do we perceive any error to the prejudice of the appellees, unless in failing to charge the administrator with interest on about $90 in money remaining on hand at the death of John Floyd, which, however, may have been properly expended or kept on hand, a matter which may be ascertained by the commissioner.

But for the errors before noticed, the decree is reversed and the cause remanded for further proceedings, and decree consistent with this opinion.

*Turner and Dunlap* for appellant; *Letcher & Tilford* for appellees.